UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL CABALLERO,
                              Petitioner,

    -vs-                                                         No. 07-CV-6181(VEB)
                                                                    DECISION AND ORDER

JAMES T. CONWAY, Superintendent,

                              Respondent.
_____

**I.    Introduction**

*Pro se* petitioner Daniel Caballero ("Caballero" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his detention in state custody. Caballero is incarcerated pursuant to judgment of conviction entered against him, following a jury trial in Monroe County Court, on charges of Sodomy in the First Degree, Sexual Abuse in the First Degree, and Endangering the Welfare of a Child. These charges stemmed from Caballero's engagement in various sexual activities with his eight-year-old step- granddaughter, TM, while she was being babysat by him.

TM spent weekends with her paternal grandmother and her step-grandfather, Petitioner, After spending the third weekend in a row at her grandparents' house, TM's mother testified that the child had trouble sleeping, started acting nervous, and told her mother that her "private area hurt a lot". Trial Transcript at pages 401-409 (hereinafter, "TT." followed by page number). The next morning, TM told her mother that the Petitioner had touched her private parts, had licked her, had fondled her, had touched her buttocks, had kissed her on her mouth and "throughout her body." *Id.* TM's mother telephoned the police. A warrant for Petitioner's arrest was issued.

He was picked up while he was out driving. Investigator Coniglio advised the petitioner of the charges which were pending against him, and read him his *Miranda* rights (TM 302, 308). Petitioner waived his rights and agreed to speak with police (TM 317-318). Upon hearing the allegations against him, the investigator testified, Petitioner put his head down and began rubbing his forehead. Petitioner stated that he did not know why he began to touch TM on her private parts; he believed his medication made him have sexual urges. Petitioner admitted to the police that he would "look at [TM] and [he] would get excited.". Petitioner admitted that he would "rub [TM's] vagina with [his] hand" and get "more excited." Petitioner told the investigators, "It was like a game we were playing, [and] she never told me to stop." Petitioner then admitted to getting on top of TM and putting his penis "on her private," that is, her vagina. Petitioner said that he might have climaxed but he did not remember. Petitioner further admitted to the investigators that he rolled TM on her stomach and then, he explained, "I began to kiss her butt with my mouth and tongue . . . My tongue went inside her butt." Petitioner said that the eight-year old child "was laughing like she was enjoying it." Petitioner said that he only did this to TM twice.

The jury found the petitioner not guilty of the first two counts of rape in the first degree and not guilty of the third count, sodomy in the first degree. However, he was found guilty of count four, sodomy in the first degree. He was found not guilty of the fifth indictment court, sexual abuse in the first degree. However, as to the sixth indictment count of sexual abuse in the first degree, he was found guilty. Petitioner was found guilty of the seventh count of the indictment, endangering the welfare of a child. He was found not guilty of the eighth and ninth indictment counts, each being rape in the first degree. He was found not guilty of the tenth and

eleventh indictment counts of sodomy in the first degree, and not guilty of the twelfth and thirteenth counts of sexual abuse in the first degree, and he was found not guilty of the fourteenth count, endangering the welfare of a child. TT.772-775.

In sum, Petitioner was convicted for one count of first degree sodomy (New York Penal ("P.L.") (former) § 130.50(3)), one count of sexual abuse in the first degree (P.L. § 130.65(3)), and one count of endangering the welfare of a child (P.L. § 260.10(1)),. He was sentenced on January 8, 2003. For the sodomy conviction, Petitioner received a determinate sentence of imprisonment of 20 years. For the sexual abuse conviction, Petitioner received a determinate sentence of 7 years. For the endangering the welfare of a child conviction, Petitioner received a sentence of one year. The longer of the two sentences were to be served in state prison, while the one-year sentence was served in the county jail. All sentences were set to run concurrently with each other. *See* Sentencing Transcript at pages 12-14.

On November 10, 2005, the Fourth Department unanimously affirmed Petitioner's conviction. *People v. Caballero*, 23 A.D.3d 1031, 803 N.Y.S.2d 849 (App. Div. 4th Dept. 2005). Petitioner sough leave to appeal to the New York State Court of Appeals, raising each of the claims now asserted in his habeas petition, thereby exhausting them according to 28 U.S.C. § 2254(b)(1). On April 12, 2006, the Court of Appeals issued a certificate denying leave.

This timely federal habeas petition followed. Caballero alleges a *Miranda* violation, and that the jury may have convicted him of unindicted crimes. In addition, Caballero asserts that the Due Process Clause of the New York State Constitution requires that the police electronically record station-house interrogations. Respondent answered the petition, arguing that first claim is procedurally defaulted and that all three claims are without merit.

The parties consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). For the reasons that follow, the petition is dismissed.

## II. Discussion

### A. General Legal Principles

#### 1. Procedural Default

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977). Thus, federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir.2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state procedural bar qualifies as an "independent and adequate" state law ground if "the last state court rendering a judgment in the case clearly and expressly stated that its judgment rest[ed] on a state procedural bar." *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 125 (2d Cir.1995) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990). Thus, "federal habeas review is precluded 'as long as the state court explicitly invoke[d] a state procedural bar rule as a separate basis for decision.'" *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989)). A state procedural bar will generally be adequate to preclude habeas review if it is "firmly established and regularly followed." *Lee v. Kenna*, 534 U.S. 362, 376 (2002) (quotation omitted)).

A habeas petitioner can overcome a procedural bar if he can show both "'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Smith v. Murray*, 477 U.S. 527, 533 (1986) (quoting *Wainwright v. Sykes*, 433 U.S. at 84); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *accord, e.g.*, *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 633 (2d Cir.2001). The Supreme Court has described "actual prejudice" as occurring when, for example, the petitioner shows "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). A habeas petitioner establishes "cause" if he can show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. at 496. An example of cause for default is a "showing that the factual or legal basis for a claim was not reasonably available" at the time preservation was required. *Id.*; *see also Reed v. Ross*, 468 U.S. 1, 15-16 (1984) ("Counsel's failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar."); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994). Ineffective assistance of counsel may constitute cause for a petitioner's failure to pursue a constitutional claim, *e.g.*, *Edwards v. Carpenter*, 120 S.Ct. 1587, 1591 (2000), but in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation, *id.* (stating that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is itself an independent constitutional claim" (emphasis in original)).

An alternative manner of overcoming a procedural default is for petitioner to show

"failure to consider [the claim] . . . will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750. However, this exception is limited to the "extraordinary" case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

### 2. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 372 U.S. 362, 375-76 (2000). An "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim. *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2000).

Federal habeas review is available for a State prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not subject to federal habeas review. *See*, *e.g.*, *Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *Cupp v Naughten*, 414 U.S. 141, 146 (1970).

In order for an adjudication on the merits to trigger a federal habeas court's statutory obligation to give deference to the state court's decision, two criteria must be met: (1) the state court must have disposed of the claim "on the merits", and (2) the state court must have reduced its disposition to a judgment. *See Sellan v. Kuhlman*, 261 F.3d 303 (2d Cir. 2001).

As discussed further below, Petitioner's second and third claims were disposed of on the merits, but the first claim was denied on a state procedural ground.

### B. Analysis of Petitioner's Claims

#### 1. Ground One:

In Ground One of his petition, Petitioner actually raises two claims. First, he asserts that his statement to the police should have been suppressed because police interrogated him prior to giving *Miranda* warnings. Second, he asserts that the prosecution failed to meet their burden of proof at the suppression hearing inasmuch as it did not call as witnesses two persons who allegedly had extensive contact with him prior to issuance of the *Miranda* warnings. They are discussed *ad seriatim* below.

##### a. *Miranda* violation

When Petitioner argued on direct appeal that the trial court erred in denying the motion to suppress his written statement as the fruit of unlawful pre-*Miranda* questioning, the Appellate Division held that "[d]efendant failed to preserve for our review his contention that his pre-*Miranda* conversation with the police constituted custodial interrogation by failing to raise that specific contention in his motion papers or at the [*Huntley*][1] hearing[.]" *People v. Caballero*, 23 A.D.3d at 1032 (citing, *inter alia*, N.Y. CRIM. PROC. LAW § 470.05(2)). The state appellate court declined to exercise its power to review that contention as a matter of discretion in the interest of justice. *Id.* (citing N.Y. CRIM. PROC. LAW § 470.15(6)(a)).

---

[1] In New York, a "*Huntley* hearing" is held if the prosecution intends to offer a defendant's confession as proof at trial. At the hearing, the prosecution has the burden of proving, beyond a reasonable doubt, that the defendant's statement was voluntary. *See People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (N.Y. 1965).

Respondent has raised the affirmative defense of procedural default, based upon the state appellate court's reliance upon an adequate and independent state ground, C.P.L. § 470.05(2) (New York's "contemporaneous objection rule") to deny the claim. The Court agrees. It appears that this rule is firmly established and regularly followed by New York state courts in the same factual circumstances as presented by Caballero's case. *See*, *e.g.*, *People v. Jacquin*, 71 N.Y.2d 825, 826-827, 527 N.Y.S.2d 728, 522 N.E.2d 1026 (N.Y. 1988) ("[D]efendant asserts that some of the questions and answers recorded on the tape constituted inadmissible custodial interrogation but inasmuch as he moved to suppress audio portions of the tape generally and failed to identify the specific questions and answers he found objectionable, contentions of inadmissibility he now raises, are unpreserved and beyond our review[.]") (citation omitted); *People v. Myers*, 1 A.D.3d 382, 383, 766 N.Y.S.2d 581 (App. Div. 2d Dept. 2003) ("The defendant's contention that the results of the field sobriety tests should have been suppressed because the arresting officer failed to advise him of his *Miranda* rights (*see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) was not preserved for appellate review, as he failed to raise this specific issue at the hearing (*see* CPL 470.05(2))); *People v. Martinez*, 287 A.D.2d 654, 731 N.Y.S.2d 872 (App. Div. 2d Dept. 2001) ("The defendant contends that the hearing court improperly denied that branch of his omnibus motion which was to suppress physical evidence because the police did not adequately apprise him of his *Miranda* rights (*see*, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) before obtaining his consent to search his premises. The contention is unpreserved for appellate review, as the defendant failed to raise that specific claim before the hearing court (*see*, CPL 470.05(2)); other citations omitted).

Caballero has not asserted either cause or prejudice to excuse the default. Although attorney ineffectiveness can amount to "cause", it must be true ineffectiveness–that is, ineffectiveness of a constitutional magnitude–not mere error. The ineffectiveness claim, in order to serve as cause, must also be fully exhausted. However, Caballero has never raised an ineffective assistance of counsel claim in state court, so he has no exhausted claim to use as "cause." Because the cause and prejudice test is conjunctive, the failure to make a showing on either prong is fatal to the defendant. In other words, a reviewing court need not determine whether there is both cause and prejudice if the defendant's proof as to one element is lacking. Finally, Caballero has proffered no new, reliable evidence that was not presented to the jury that would demonstrate his factual innocence, and so he cannot avail himself of the miscarriage-of-justice exception. Therefore, the first part of Ground One is dismissed as procedurally defaulted.

### b. Prosecution's Failure To Meet Burden of Proof at the *Huntley* Hearing

As the second part of Ground One, Petitioner asserts that the prosecution failed to meet their burden of proof at the *Huntley* hearing because they did not call two witnesses who had contact with Petitioner prior to his waive of his rights under *Miranda*.

The sole witness called by the prosecution was Investigator Coniglio, who was the lead investigator on the case, and who administered the *Miranda* warnings and obtained Caballero's waiver. The two uncalled witnesses were Officer Ortiz, who pulled Caballero over and brought him to the station-house for questioning; and Investigator Cassidy, who worked with Investigator Coniglio in interviewing Caballero. With regard to Officer Ortiz, Petitioner notes that Investigator Coniglio saw Petitioner talking to Officer Ortiz while he was being taken into

custody, but Investigator Coniglio did not hear what was being said. Petitioner also quotes in his petition some of Investigator Coniglio's *Huntley* testimony, in which he described the pre-*Miranda* conversation he and Investigator Cassidy had with Caballero: "Like I said, [sic] family man, family members, if he was involved in any sports. Just general conversation about twenty, thirty-five minutes, maybe[,]" "just to get [Petitioner] comfortable with me and get comfortable with Investigator Cassidy, who was going to ask him questions or asked him questions . . . ."

The Appellate Division dismissed this claim regarding the prosecution's failure to call Officer Ortiz and Investigator Cassidy on the merits. The court stated that "[w]here, as here, the People have initially demonstrated the legality of the police conduct and defendant's waiver, the burden of persuasion on the motion to suppress rests with defendant," and in the present case, Caballero "failed to meet that burden" because he "presented no *bona fide* factual predicate which demonstrated that [the [(uncalled)] apprehending officers] possessed material evidence on the question of whether the statements were the product of overtly or inherently coercive methods, [and thus] the People could meet their burden through the testimony of the [investigating officer] who elicited [the written statement]." *People v. Caballero*, 23 A.D.2d at 1032 (quotations and citations omitted, alterations in original). The Appellate Division's holding was a reasonable determination of the facts in light of the evidence presented, and therefore relief is not available under 28 U.S.C. § 2254(d)(2). Furthermore, Petitioner has not pointed to any clearly established Supreme Court precedent recognizing a constitutional requirement that the prosecution must call all witnesses involved in a defendant's arrest and interrogation at a hearing litigating the voluntariness of a confession. Rather, Petitioner's argument appears to be made in relation to a state law evidentiary principle, but the law is clear that mere violations of state law

are not cognizable on habeas review. In any event, the Appellate Division correctly found that there was no violation of the principle enunciated in *People v. Witherspoon*, 66 N.Y.2d 973, 974, 489 N.E.2d 758, 759, 498 N.Y.S.2d 789, 790 (N.Y. 1995), that absent the presentation by a defendant of a *bona fide* factual predicate demonstrating that the arresting officers possessed material evidence on the question of whether that defendant's incriminating statements were produced by overtly or inherently coercive methods, the prosecution was not required to produce such officers at the suppression hearing. Accordingly, for the reasons discussed above, the second part of Ground One is dismissed.

B.  **Ground Two: Conviction Upon Unindicted Crimes**

As Ground Two of the petition, Caballero contends that reversal of his conviction is required because the jury may have convicted him of an unindicted crime and different jurors may have convicted him based on different acts. Specifically, he asserts that different jurors may have convicted him based on different indictment counts, where he was indicted for two discrete acts of sexual contact in October 2001, while the victim testified to over ten such acts during that time-frame, and the indicted acts were not connected sequentially or otherwise to the proof.

A violation of the federal constitution's due process clause results when a criminal defendant is convicted of a crime he was never charged with committing: "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge . . . are among the constitutional rights of every accused." *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644, 647 (1948) (citation omitted); *accord*, *e.g.*, *Ricalday v. Procunier*, 736 F.2d 203, 207 (5th Cir. 1984). The indictment, which must provide the defendant with fair notice of the accusations

against him so that he will be able to prepare a defense, prevents the prosecutor from usurping the powers of the Grand Jury by ensuring that the crime for which defendant is tried is the same crime for which he was indicted, rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence. In other words, the indictment serves to protect a defendant from variances in proof. Finally, an indictment prevents later retrials for the same offense in contravention of the constitutional prohibition against double jeopardy. From a federal constitutional standpoint, proof at trial that varies from the indictment potentially compromises the functions of the indictment to guarantee the defendant his Sixth Amendment right to fair notice of the charges against him. *United States ex rel. Richards v. Bartlett*, No. CV-92-2448, 1993 WL 372267, at *4 (E.D.N.Y. Sept.9, 1993) ("However, the general rule that an accusatory allegation, such as an indictment, and proof at trial must correspond rests not only upon the grand jury clause of the Fifth Amendment but also on the requirements (1) that the accused be protected against another prosecution for the same offense; and (2) that the accused be informed of the charges against him, so that he may present his defense without being taken by surprise by evidence offered at trial. *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).").

On direct appeal, the Appellate Division rejected this contention because, "although the victim testified that defendant committed the criminal acts on more than 10 occasions," "the court's charge to the jury eliminated any danger that the jury convicted defendant of an unindicted act or that different jurors convicted defendant based on different acts[.]" *People v. Cabellero,* 23 A.D.2d at 1032 (internal quotations and other citations omitted).

In pertinent part, the trial judge instructed the jury as follows:

> Now, to the extent there may have been of even more occasions or acts of each of these alleged crimes, that is[,] more than two [alleged crimes], you are to disregard such in terms of the crimes which are actually charged and which you will be considering. You are to consider only the first two occasions or acts as they allegedly occurred in chronological order.

TT.716. Trial counsel objected that this did not solve the "*McNab* issue"[2], arguing that there was still a possibility that the jury would convicted Caballero of unindicted instances of sodomy and sexual abuse.

In order to address trial counsel's concerns, the trial court instructed the jury, with regard to each incident of sodomy and sexual abuse, to "[r]emember that count one refers to the first alleged occasion or act during this time period, while count eight refers to the second alleged occasion or act during th[at] time period," and so on for each count of the indictment. *See* TT.714, 716-717, 719, 721-722, 724, 726-727. With regard to the endangerment charges, the trial court instructed the jury, "Please note that the underlying sexual conduct alleged in these counts is related to the other counts in the same sense that the same occasions or acts are involved. Thus, as I previously advised you, to the extent that there has been evidence of even more occasions or acts of each of the alleged crimes underlying the other counts, that is more than two such

---

[2] *People v. McNab*, 167 A.D.2d 858, 858, 562 N.Y.S.2d 590, 591 (App. Div. 4th Dept. 1990). In *McNab*, the defendant was indicted on seven identical counts of rape by forcible compulsion; however, the complainant testified at trial that nine acts of rape occurred, and the jury convicted him of only the seventh count of rape. The Appellate Division found that it was impossible to ascertain which alleged act of rape was found by the jury to have occurred, whether it was one of the seven for which he was indicted, or indeed whether different jurors convicted defendant based on different acts. The court held that reversal was required because the jury may have convicted defendant of an unindicted rape, resulting in the usurpation by the prosecutor of the exclusive power of the Grand Jury to determine the charges. *Id.* (citing *People v. Grega*, 72 N.Y.2d 489, 495-496, 534 N.Y.S.2d 647, 531 N.E.2d 279 (N.Y. 1988) ("No person shall be held to answer for a capital or otherwise infamous crime . . . unless on indictment of a grand jury". (N.Y. Const., art. I, § 6; *see also*, CPL 210.05.) The [New York State] Constitution further provides that an accused "shall be informed of the nature and cause of the accusation." (*Id.*; *see also*, CPL 200.50.)). As a matter of New York State law, a defendant has a fundamental, non-waivable right to be tried and convicted of only those crimes charged in the indictment. *McNab*, 167 A.D.2d at 858 (citation omitted).

occasions or acts, you are to disregard such in terms of the crimes which are actually charged and which you will be considering." TT.728.

The Appellate Division correctly applied New York State law. Most important for this Court's purposes, it did not unreasonably apply federal law or unreasonably determine the underlying facts in ruling that the trial court's jury instruction obviated the risk of Caballero being convicted on unindicted crimes. Moreover, the fact that the jury acquitted Caballero of most of the charges against him demonstrates the jurors' ability to follow the court's instructions and parse the evidence carefully. As noted above, Caballero was convicted of only one count each of sodomy, sexual abuse, and child endangerment. The jury acquitted him of the remaining eleven counts in the indictment.

In sum, Caballero has not demonstrated a violation of his due process rights, and Ground Two is dismissed.

### C.     Ground Three: Failure of the Police to Electronically Record Petitioner's Interrogation

As his third claim for relief, Petitioner argues that the Due Process Clause of the *New York State* Constitution requires that the police electronically record station-house interrogations, and his rights under the State Constitution were violated by the police in his case. On direct appeal, the Appellate Division summarily rejected that contention. *People v. Caballero*, 23 A.D.3d at 1031-1032 (citing, *inter alia*, *People v. Oglesby*, 15 A.D.3d 888, 888, 788 N.Y.S.2d 793, 795 (App. Div. 4th Dept. 2005) ("[W]e conclude that, '[b]ecause "[t]here is no Federal or State due process requirement that interrogations and confessions be electronically recorded" . . ., defendant was not denied due process based on the failure of the police to record the

interrogation resulting in [his] statement' (*People v. Martin*, 294 A.D.2d 850, 850, 741 N.Y.S.2d 763, *lv. denied* 98 N.Y.2d 711, 749 N.Y.S.2d 9, 778 N.E.2d 560).") (alterations and ellipsis in original).

Caballero thus has not asserted an error of New York State case law or the New York State Constitution. Most important for purposes of this habeas proceeding, Caballero has pointed to no Federal precedent standing for the proposition that the failure to videotape or otherwise electronically record station-house interrogations violates any right guaranteed under the United States Constitution. It is well established that Federal habeas corpus relief is only available to rectify errors of Federal constitutional dimension. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (A federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States;" it is not the province of a federal habeas court to re-examine state court determinations of state law.).

The Court notes that several Federal circuit courts of appeals have concluded that the United States Constitution does not obligate police officers to record interrogations or confessions. *E.g.*, *Ridgley v. Pugh*, 176 F.3d 484 (9th Cir.1999) (finding that habeas claim based on police officer's failure to tape-record a portion of petitioner's interrogation "does not state a violation of a federal constitutional or statutory right"); *United States v. Yunis*, 859 F.2d 953, 961 (D.C. Cir.1988) (finding "no constitutional requirement to record confessions by any particular means," including videotaping, even if such equipment is available); *Reinert v. Larkins*, 379 F.3d 76, 94 n. 4 (3d Cir.2004) ("Reinert urges us to follow the example of the Supreme Courts of Minnesota and Alaska and rule that, in the absence of an electronic record of the custodial interrogation in the hospital (by either audiotape or videotape), we should suppress the

confession as a violation of the Fifth Amendment, Sixth Amendment, protections of due process, protection against self-incrimination, and provisions for effective assistance of counsel and confrontation. While the advocated policy may be a desirable one, Reinert can point to no Pennsylvania law supporting it; indeed there is none. Even if there were such a rule announced in Pennsylvania, we, as a federal court sitting in habeas jurisdiction, would not have the authority to review a violation of the state constitution. It therefore goes without saying that, given that there is no right to recorded custodial interrogations under Pennsylvania law, we are certainly not at liberty to create one. Insofar as Reinert invokes the Fifth and Sixth Amendments of the Federal Constitution, he invokes a purported federal right to have a custodial interrogation recorded. He does not, however, cite any authority for this proposition; again there is none. We will, at this juncture, decline to infer a federal right to have custodial interrogations recorded.") (internal citations omitted); *United States v. Zamudio*, No. 99-2256, 2000 WL 488474, at *2 (10th Cir. Apr. 26, 2000) (unpublished decision) (upholding the district court's conclusions that the Fifth Amendment does not require the recording of post-arrest statements, and that the absence of a tape recording did not constitute a due process violation) (citing *United States v. Yunis*, 859 F.2d at 961 ("[T]there is no constitutional requirement that confessions be recorded by any particular means.")); *United States v. Toscano-Padilla*, No. 92-30247 996 F.2d 1229, 1993 WL 210793 (9th Cir. June 16, 1993) ("We decline to hold, as appellant apparently encourages, that a failure by law enforcement officials to record an interrogation violates due process and automatically mandates suppression. Also, while we would certainly recommend officials take extemporaneous notes during questioning, a failure to do so certainly does not invalidate the information gained from the interrogation. Whether such a failure undermines the accuracy and credibility of later

-16-

testimony is an issue uniquely for the finder of fact.") (footnote omitted); *United States v. Coades*, 549 F.2d 1303, 1305 (9th Cir.1977) ( "Appellant contends that testimony of an FBI agent that appellant confessed to the crime charged should have been suppressed because the interrogation was not recorded electronically or stenographically. Appellant recognizes the lack of authority for his position but urges that we adopt it to insure reliability of police reports of oral confessions during custodial interrogation. . . . The need for the rule suggested by appellant and the particular form such a rule should take are appropriate matters for consideration by Congress, not for a court exercising an appellate function.").

Petitioner has not alleged that the United States Supreme Court has established that criminal suspects have a constitutional right to have their interrogations and/or their statements to the police electronically recorded. Because Petitioner's unrecorded-confession claim is not based on an alleged violation of a Federal constitutional right, it is not cognizable in Federal habeas corpus and may not be the basis of habeas relief. *Accord*, *e.g.*, *Crenshaw v. Renico*, 261 F. Supp.2d 826, 837 (E.D. Mich. 2003); *Calicut v. Quigley*, No. 05-CV-72334-DT, 2007 WL 37751, at *4 (E.D. Mich. Jan. 3, 2007) ("Given the lack of holdings by the Supreme Court on the issue of whether a defendant has a constitutional right to have his confession audio or videotaped, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *See Carey v. Musladin*, __ U.S. __, __, 127 S.Ct. 649, 654, __ L.Ed.2d __, __ (2006)."). Consequently, the claim set forth under Ground Three must be dismissed. *Accord*, *e.g.*, *id.*

### III. Conclusion

For the reasons set forth above, Petitioner 's request for a writ of habeas corpus is denied

and the petition is dismissed. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: December 1, 2010
Rochester, New York